# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————————

№ 24-CV-1663 (RER)

———————————————

CHRISTOPER RILEY

VERSUS

OMH COMMISSIONER OF NEW YORK STATE OFFICE OF MENTAL HEALTH

———————————

**MEMORANDUM & ORDER**

———————————

**RAMÓN E. REYES, JR., District Judge:**

Christopher Riley ("Petitioner" or "Riley") brings this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to be released from the custody of respondent Commissioner of the New York State Office of Mental Health. (ECF No. 1 ("Petition" or "Pet.")).[1] After carefully reviewing the record, and for the reasons set forth herein, the Petition is denied.

## BACKGROUND

### I. Factual Background

Petitioner is currently held in New York State custody through the Commissioner of the New York State Office of Mental Health and has been admitted to a State psychiatric facility. (ECF No. 17-4 at SR 231–32 (sealed)).[2]  On August 16, 2000, Riley visited his

---

[1] Riley mislabeled the Petition as one under 28 U.S. § 2255. Section 2255 applies only to petitioners in federal custody.

[2] Page numbers for the petition are to the ECF-generated PDF page numbers. Page numbers for defendant OMH's answer, memorandum in opposition, and underlying state record are to the Bates stamped "SR" page numbers.

social worker at the East New York Clubhouse, an outpatient psychiatric treatment center in Brooklyn. (ECF No. 17-2 at SR 30 (sealed)). At the time, Riley was on parole from burglary and assault convictions in 1988. (ECF No. 15-2 at SR 105; ECF No. 17-2 at SR at 31, 34 (sealed)). Riley was visibly upset, and a social worker attempted to calm him. (ECF No. 17-2 at SR 30 (sealed)). Riley, however, stabbed the social worker with a knife in the neck, arm, and chest. (*Id.*) Riley fled the scene and was arrested later that day for a burglary at his girlfriend's house. (*Id.*) As a result of that burglary charge, Riley's parole was revoked, and he received a two-year sentence of incarceration. (ECF No. 17-2 at SR 30–31 (sealed)).[3] Following the arrest in 2000, Riley was continuously detained and hospitalized while his criminal cases were pending. (ECF No. 17-2 at SR 31–32 (sealed); ECF No. 17-4 at SR 217–18 (sealed)). Indeed, during this time, Riley was diagnosed with paranoid schizophrenia. (ECF No. 17-2 at SR 31 (sealed)).

In 2002, while Riley was still in custody for the parole violation related to the August 2000 burglary of his girlfriend, he was indicted and charged with Attempted Murder in the Second Degree for the offense against his social worker. (ECF No. 17-3 at SR 48 (sealed)). In April 2006, the Office of the District Attorney of Kings County agreed to accept Riley's plea of "not responsible by reason of mental disease or defect" ("NRRMDD") to the attempted murder of his social worker. (ECF No. 15-2 at 24–25); CPL § 220.15. The State court, therefore, issued an examination order that same month for Riley to undergo psychiatric examination to determine if he lived with a "dangerous mental disorder" as defined by C.P.L. § 330.20(c). (ECF No. 15-2 at SR 56). The psychiatric evaluations found

---

[3] These burglary charges were later dismissed in November 2000 due to a finding of "incapacity due to mental disease" pursuant to Section 730 of New York Criminal Procedure Law ("CPL"). (ECF No. 17-2 at SR 31).

that Riley suffered from dangerous mental disorders—paranoid schizophrenia and antisocial personality disorder—and therefore should be retained in a "secure psychiatric facility." (ECF No. 17-2 at 29–42 (sealed); ECF No. 17-3, at SR 45–54 (sealed)). Two months later, the Supreme Court of the State of New York, Kings County accepted Riley's plea, found that Riley suffered from a dangerous mental disorder, and ordered Riley to be committed to the custody of the Commissioner of Mental Health for confinement in a secure facility. (ECF No. 15-2 at SR 55–57).

### A. "Retention Orders" Under CPL § 330.20

Under New York law, a person charged with a crime may be determined, by the acceptance of a plea or by verdict, to be NRRMDD. *Richard S. v. Carpinello*, 589 F.3d 75, 77 (2d Cir. 2009) (citing *Francis S. v. Stone*, 221 F.3d 100, 101 (2d Cir. 2000)). Upon entry of a verdict or acceptance of an NRRMDD plea, "the court orders a psychiatric examination and conducts an initial hearing to determine whether the acquittee is mentally ill or is suffering from a dangerous mental disorder." *Id.* (citing CPL §§ 330.20(2), (5)–(6)).

Upon consideration of the hearing evidence, the NRRMDD acquittee receives one of three classifications: (1) "Track 1", if he has a "dangerous mental disorder"[4] (C.P.L. § 330.20(1)(c)); (2) "Track 2", if he is "mentally ill" and in need of further institutional treatment (C.P.L. § 330.20(1)(d)); and (3) "Track 3", if he does not have a dangerous mental disorder and is not mentally ill (C.P.L. § 330.20(7)). *See People v. Stone*, 73

---

[4] "'Dangerous mental disorders' means: (i) that a defendant currently suffers from a 'mental illness' as that term is defined in subdivision twenty of section 1.03 of the mental hygiene law, and (ii) that because of such condition he currently constitutes a physical danger to himself or others." CPL § 330.20(1)(c). "'Mental illness' means an affliction with a mental disease or mental condition which is manifested by a disorder or disturbance in behavior, feeling, thinking, or judgment to such an extent that the person afflicted requires care, treatment and rehabilitation." N.Y. Mental Hyg. Law § 1.03(20) (McKinney).

N.Y.2d 296, 300 (1989). The acquitted individuals within Track 1 must be committed to a "secure facility," as defined under C.P.L. § 330.20(1)(b), for an initial six-month term. (C.P.L. § 330.20(1)(f), (6)). Those in Track 2 are committed to the custody of the New York State Office of Mental Health ("OMH") with an order of conditions. (C.P.L. § 330.20(7)). Those within Track 3 must be discharged either unconditionally or subject to an order of conditions. (C.P.L. § 330.20(7), (12)–(13)).

Under C.P.L. § 330.20, periodic reviews are made to determine whether individuals should be retained on the same track or placed on a different track. C.P.L. § 330.20(f)–(j), (8)–(9).[5] "In the context of subsequent retention hearings pursuant to CPL 330.20(9), a determination that one continues to suffer from a 'dangerous mental disorder' will result in continued confinement in a secure psychiatric facility while a finding that an individual does not have a dangerous disorder but is 'mentally ill' results in transfer to or retention in a non-secure facility." *Matter of David B.*, 97 N.Y.2d 267, 276–77 (2002) (citing C.P.L. § 330.20(9)); *see also* C.P.L. § 330.20(7)).[6] "[R]etention of an [NRRMDD] acquittee in a

---

[5] "At the expiration of a six-month commitment order to a secure facility, the NRRMDD acquittee receives the first of a series of court reviews to determine his then current mental condition. If the court finds that the individual continues to have a dangerous mental disorder, he must be recommitted under a first retention order for not more than one year. CPL § 330.20(1)(g), (8). Second and subsequent reviews occur every two years. CPL § 330.20(1)(h), (9). If upon review a court finds that the NRRMDD acquittee no longer suffers from a dangerous mental disorder, it may direct transfer to a non-secure facility with an order of conditions if the individual is still mentally ill, or release with an order of conditions if the individual is no longer mentally ill. CPL § 330.20(11), (12); See *Richard S.* 589 F.3d at 77-78.

[6] "'Mentally ill' under CPL 330.20 (1) (d) has three distinguishing characteristics: (1) the illness is of a kind that requires inpatient care and treatment; (2) care and treatment of the illness are essential to the defendant's welfare; and (3) because of impaired judgment the defendant does not understand the need for such care and treatment." *Matter of David B.*, 97 N.Y.2d at 277. "If the court finds that the defendant is mentally ill but not dangerous, he is classified as "track two" and the court must issue an 'order of conditions and an order committing him to a nonsecure facility, which custody is governed not by the Criminal Procedure Law but by the civil Mental Hygiene Law." *Janakievski,* 955 F.3d at 317(citing § 330.20(7) and *Allen B. v. Sproat*, 23 N.Y.3d 364, 368–69, (2014)). "An 'order of conditions' is an order that, *inter alia*, requires a defendant to comply with a particular treatment plan or any other condition which the court determines to be reasonable, and is 'valid for five years from the date of its issuance.' *Id.* (citing C.P.L. § 330.20(1)(o)).

non-secure facility is justified where the State shows by a preponderance of the evidence that continued care and treatment are essential to the physical or psychological welfare of the individual and that the individual is unable to understand the need for such care and treatment." *Id*. at 278-279.

## B. Riley's Changing Status Under CPL § 330.20

On June 21, 2006, Riley was placed on "Track 1" and remained there until June 6, 2018, (*See* ECF No. 15-2 at SR 61–89), when the state court signed a new "Subsequent Retention Order" and "transfer order"[7] transferring him to a non-secure OMH facility because he no longer "suffer[ed] from a dangerous disorder,"[8] but still "suffer[ed] from a mental illness." (*Id*. at SR 90–96). Pursuant to the Order, Riley was placed on "Track 2" and was transferred to a nonsecure facility, Kingsboro Psychiatric Center ("KCP"),[9] where he is currently housed. (ECF No. 17-4 at SR 231–32 (sealed)). Following evidentiary hearings, the New York State Supreme Court granted similar "Subsequent Retention Orders" on August 6, 2020 (ECF No. 15-2 at SR 97–100) and April 21, 2021 (*id*. at SR 104-124).

---

[7] "The commissioner may apply for a transfer order, pursuant to this subdivision, when a defendant is in his custody pursuant to a retention order or a recommitment order, and the commissioner is of the view that the defendant does not have a dangerous mental disorder or that, consistent with the public safety and welfare of the community and the defendant, the clinical condition of the defendant warrants his transfer from a secure facility to a non-secure facility under the jurisdiction of the commissioner or to any non-secure facility designated by the commissioner." N.Y. Crim. Proc. Law § 330.20(11) (McKinney).

[8] In Riley's transfer order the trial court, mirroring language from CPL § 330.20(11), found: "That the above-named defendant does not have a dangerous mental disorder as that term is defined in paragraph (c) of subdivision one of CPL 330.20 and that the issuance of a *Transfer Order* is consistent with the public safety and welfare of the community and the defendant, and that the clinical condition of the defendant warrants his transfer from a secure psychiatric center to a non-secure psychiatric center." (ECF No. 15-2 at 70).

[9] On June 6, 2018, pursuant to CPL 330.20(11), the Hon. Lori Currier Woods also signed an "order of conditions" which was in effect for five years and ordered Riley to comply with two conditions: (1) submit to random screens as directed and (2) abstain from use of alcohol and substance use" (ECF No. 15-2 at 93-96).

C. Riley's 2023 Retention Order

On December 9, 2021, OMH filed an application for a Subsequent Retention Order, again arguing that Riley's detention in a nonsecure facility was necessary because he was still "mentally ill" as defined under C.P.L. § 330.20(1)(d). (*Id.* at SR 206–09). In support of the application, OMH relied upon an affidavit from Dr. Andrea Norton, M.D., the Director of Inpatient Psychiatry at Kingsboro Psychiatric Center, opining that Riley's current and continued diagnosis was schizophrenia and that the December 2021 application for a Subsequent Retention Order should be granted. (*Id.* at 238-239).

On March 2, 2023, Riley filed a *pro se* "Motion of Eradication of Plead and Summons Request Claims" wherein Riley appeared to request a withdrawal of his 2006 plea and his release into the community. (*Id.* at SR 241, 245–55). Within his motion, Riley raised a litany of complaints against OMH and its staff. (*Id.* at SR 250). He also included a four-page memo of law that he has included in all subsequent filings, including this Petition, wherein he claims that the State violated his rights under Title II Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131- 12134; the Sixth, Eighth, and Fourteenth Amendments. (*See Id.* at 274–77; Pet.).

On June 15, 2023, the State court held an evidentiary hearing to decide OMH's September 21, 2021, application for a Subsequent Retention Order. (ECF No. 15-2 at SR 295). At the hearing, OMH's sole witness, Dr. Manjuka Vikas, testified that Riley suffered from schizophrenia. (*Id.* at SR 300). Dr. Vikas also opined that Riley denies both that he suffers from a mental illness and that he does needs medication. (*Id.*) Dr. Vikas opined further that if Riley were released into the community without any kind of constraints, that, while he would not be a danger to himself, he would be a danger to others. (*Id.* at SR 316).

6

Riley also testified at the hearing. (*Id.* at SR 390). He testified to experiencing difficult side effects from medications prescribed to him before he was prescribed Abilify but testified that he would continue taking the medication if ordered by the court as a condition of his release. (*Id*. at SR 392–93). He apologized for his violent actions against his social worker—though he described them as a "poke"—and asked for his release to the community. (*Id*. at SR 408–09). Following the hearing, Riley's counsel filed a "Memorandum in Support of Release of Christopher Riley" opposing the state's application, but his counsel chose not to adopt Riley's "motion of eradication." (ECF No. 15-2 at SR 413–426; ECF No. 15-3 at SR 427–29).

In a September 21, 2023, decision the Honorable Guy J. Mangano, Jr. granted OMH's application for a Subsequent Retention Order. (ECF No. 15-3 at SR 442–449). Judge Mangano found "OMH has established by a fair preponderance of the credible evidence that defendant is mentally ill, that he is in need of inpatient care and treatment, and that his judgment is so impaired that he doesn't understand the need for such care and treatment." (*Id.* at SR 448) (internal citations omitted)).

Judge Mangano also denied Riley's *pro se* "motion of eradication" for "a multiplicity of reasons" finding (1) the motion was not properly before the Court where Riley's counsel did not adopt the motion; (2) "[n]o statute or jurisprudence which conveys it the authority to grant the relief – 'eradication' – that defendant seeks"; and (3) the motion was "incomprehensible" and "only bolsters this Court's opinion that defendant is mentally ill, that he continues to need inpatient treatment, and that he does not understand the need for this care and treatment." (*Id.* at SR 448–49) (citing in part *People v. Rodriguez*, 95 NY2d 497, 501-502 (2000)). That same day, Judge Mangano signed the Subsequent

7

Retention Order ("2023 Retention Order") which went into effect retroactively to September 21, 2021, and expired December 22, 2023. (*Id.* at SR 438–41).

On October 12, 2023, Riley, through counsel, filed a Notice of Appeal. (*Id*. at SR 451). The following month, Riley filed a *pro se* application to the Appellate Division, Second Department, for leave to appeal Judge Mangano's decision as to the 2023 Retention Order. (*Id.* at SR 453). Riley argued the decision was "unfair" and requested his release to a community-based treatment program. (*Id.*) On June 5, 2024, the Appellate Division denied Riley's motion for leave to appeal. (*Id.* at SR 658). On November 29, 2023, OMH filed another application for a Subsequent Retention Order. (*Id.* at SR 659–675). On May 23, 2024, the State court held another evidentiary hearing to decide the application. (*Id.* at SR 702–785). Two months later, Judge Mangano signed a new Subsequent Retention Order, that is in effect until 2026, and then issued a Decision and Order providing the findings of fact and legal analysis underlying the granting of the Subsequent Retention Order. (*Id.* at 786-801).

II.    Procedural Background

Riley filed his Petition on February 21, 2024. (*See* Pet.).  OMH filed its answer and memorandum in opposition on October 17, 2024. (ECF No. 15 ("Gov't. Opp.")). Thereafter, Riley filed several letters to advance substantially the same arguments presented in his Petition, while also presenting additional complaints against OMH. (ECF Nos. 18, 20–24).

Although difficult to parse, the Court construes the Petition and reply letters to advance three arguments: (1) that Judge Mangano's 2023 Retention Order violated his rights under the Due Process Clause of the Fourteenth Amendment (Pet. at 2–12); (2) his

release to a community-based treatment program is required under Title II of the ADA (*id*. at 9–12); and (3) his continued confinement constitutes "cruel and unusual punishment" under the Eighth Amendment (*id*. at 9, 11).

## LEGAL STANDARD

"Under 28 U.S.C. § 2254, a person in custody pursuant to the judgment of a State court may petition a federal district court for a writ of habeas corpus on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *Hernandez v. McIntosh*, 146 F.4th 142, 156 (2d Cir. 2025) (quoting 28 U.S.C. § 2254(a)); *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Congress, however, through the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") accords "substantial deference" to state court decisions adjudicating the habeas petitioner's claims on the merits. *Young v. Collado*, 738 F. Supp. 3d 333, 346 (E.D.N.Y. 2024) (Chin, J.) (quoting *Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015)). Under AEDPA, the court cannot grant relief unless the state court decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § § 2254(d)(2). *Harrington*, 562 U.S. at 97–98. This standard "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)).

A state court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court but

nevertheless arrives at a different result. *Hernandez*, 146 F.4th at 156 (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)). Such an unreasonable application of clearly established federal law "must be objectively unreasonable, [and] not merely wrong." *Alvarez v. Ercole*, 763 F.3d 223, 229 (2d Cir. 2014) (alteration in original) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)). "[A] state-court decision is not unreasonable if "'fairminded jurists could disagree' on [its] correctness." *Davis v. Ayala*, 576 U.S. 257, 269 (2015) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Federal courts presume that a state court's factual determinations are correct, and the petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also *Wood v. Allen*, 558 U.S. 290, 301 (2010) ("A state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").

## DISCUSSION[10]

As stated previously, Riley's Petition is difficult to parse. The Court is mindful that *pro se* submissions are to be liberally construed and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v.*

---

[10] The Court has authority to review the legality of Riley's civil confinement under 28 U.S.C. § 2254. *See Duncan v. Walker*, 533 U.S. 167, 176 (2001) ("[F]ederal habeas corpus review may be available to challenge the legality of a state court order of civil commitment or a state court order of civil contempt"). Also, even though the 2023 Retention Order expired and was replaced by another Subsequent Retention Order in 2024, Riley's Petition is not moot. *See Janakievski v. Exec. Dir., Rochester Psychiatric Ctr.*, 955 F.3d 314, 319 (2d Cir. 2020) ("A habeas petition is generally not moot so long as the petitioner continues to be held in the custody that he alleges is unlawful.") (citing Dhinsa v. Krueger, 917 F.3d 70, 77 n.5 (2d Cir. 2019)). Further, Riley's current detention at a nonsecure facility clearly establishes "an actual injury which is likely to be redressed by a favorable judicial decision." *See Janakievski* 955 F.3d at 319 (citing *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999)). If the 2023 Retention Order application had been denied, Riley would have been released to the community. If released, any future applications from OMH to have Riley recommitted would require a heightened standard (see CPL § 330.20(14)), and he would also be closer to receiving a complete discharge order, terminating his order of conditions, available to Track 3 individuals at liberty in the community (see CPL § 330.20(13)).

*Pardus*, 551 U.S. 89, 94 (2007); *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983) (noting that courts should review *pro se* habeas petitions with a lenient eye). Consequently, the Court is obliged to interpret Petitioner's pleadings as raising the strongest arguments they suggest. *See Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009). Accordingly, the Court will adjudge Riley's *pro se* Petition leniently and construe his arguments to the fullest extent: to wit, whether the 2023 Subsequent Retention Order violated his rights under (1) the Due Process Clause of the Fourteenth Amendment and (2) Title II of the ADA; and (3) constitutes "cruel and unusual punishment" under the Eighth Amendment to the United States Constitution.

I.      Riley's Fourteenth Amendment Claim Lacks Merit

Riley argues that his release to the community is warranted because the 2023 Retention Order violated his rights under the Fourteenth Amendment's Due Process Clause. The Court construes Riley's argument under both prongs of the AEDPA standard: (1) that the 2023 Retention Order was contrary to or an unreasonable application of clearly established federal law; and (2) it was based on an unreasonable application of the facts. The Court, however, is not persuaded by either argument.

A.   The 2023 Retention Order Was Not Contrary To, Or An
     Unreasonable Application of Clearly Established Federal Law

Riley challenges his continued confinement under the due process clause of the Fourteenth Amendment. (Pet. at 6–8) (citing *Addington v. Texas*, 441 U.S. 418 (1979); *O'Connor v. Donaldson*, 422 U.S. 563 (1975); *Jackson v. Indiana*, 406 U.S. 715 (1972) and; *Foucha v. Louisiana*, 504 U.S. 71 (1992)).[11] Under long established U.S. Supreme

---

[11] Riley also cites to *North Carolina v. Pearce*, 395 U.S. 711 (1965) and *Archuleta v. Hedrick*, 365 F.3d 644 (8th Cir. 2004), but neither case is relevant here. *Pearce* addresses the issue of double jeopardy, which is

Court law, the Fourteenth Amendment's Due Process Clause requires states to satisfy two elements to continue to detain an insanity acquittee: (1) that he is mentally ill; and (2) that he is dangerous. *Richard S. v. Carpinello*, 589 F.3d 75, 81 (2d Cir. 2009) ("[t]he United States Supreme Court has long held that the Due Process Clause allows an insanity acquittee to be confined 'as long as he is both mentally ill and dangerous. . ..'") (quoting *Foucha v. Louisiana*, 504 U.S. 71, 77 (1992)); *see also Kansas v. Crane*, 534 U.S. 407, 411–12 (2002) (inability to control one's dangerousness is not a prerequisite for constitutional confinement); *Jones v United States*, 463 U.S. 354, 365 (1983) (violence is not a prerequisite for a constitutional confinement); *In re David B.*, 97 N.Y.2d 267, 276–79, 739 N.Y.S.2d 858 (2002) (describing New York's statutory scheme for involuntary commitment of insanity acquittees, which is consistent with federal law). Judge Mangano's 2023 Retention Order was not contrary to, or an unreasonable application of clearly established federal law. Judge Mangano's decision reasonably analyzed if OMH properly showed that Riley was mental ill as defined by N.Y. C.P.L. § 330.20(1)(d), and, since the requirements of N.Y. C.P.L. § 330.20 comply with the Fourteenth Amendment's requirements of mental illness and dangerousness to oneself or others, Judge Mangano's application of the law complied with the requirements of the Fourteenth Amendment.

Judge Mangano based his decision on the standard set by the N.Y. C.P.L. § 330.20(1)(d) and then applied the facts gathered through Dr. Norton's report, Dr. Vikas' testimony, and Riley's own testimony. (ECF No. 15-3 at SR 445–49). Under C.P.L. § 330.20(1)(d), the State has to prove three elements to show that an insanity acquitee is mentally ill: (1) the illness is of a kind that requires inpatient care and treatment, (2) care

---

not present in this case, and *Archuleta*—along with not being U.S. Supreme Court binding precedent—is a section 2241 petition brought by a litigant in federal custody.

and treatment of the illness are essential to the defendant's welfare, and (3) because of impaired judgment the defendant does not understand the need for such care and treatment. C.P.L. § 330.20(1)(d); (ECF No. 15-3 at SR 445–46). Judge Mangano also rightly noted that while the word "dangerous" is not included in the statute, the element is "subsumed in the language of the provision" and therefore satisfies the constitutional requirements of the 14th Amendment. (ECF No. 15-3 at SR 446; *In re David B.*, 97 N.Y.2d 267, 277 (2002)).

Judge Mangano first, relying on Dr. Vikas' testimony and Dr. Norton's report, found that Riley suffers from schizophrenia and therefore fell within the legal definition of mental illness. (ECF No. 15-3 at SR 446). Second, Judge Mangano found, based on the testimonies of Dr. Vikas and Riley, that Riley's judgment was so impaired that he could not understand the need for care and treatment. (*Id.*) Last, Judge Mangano found, based again on the testimonies of Dr. Vikas and Riley, that Riley required further in-patient treatment and that such care was necessary for Riley's welfare. (*Id.* at 446–48). Accordingly, Judge Mangano ruled on the factors in C.P.L. § 330.20(1)(d) and found that OMH made a proper showing that Riley was mentally ill and could continue being confined in a non-secure facility. (*Id.* at 448). Because the factors of C.P.L. § 330.20(1)(d) comply with the requirements of the 14th Amendment, *see Matter of David B.*, 97 N.Y.2d at 277, Judge Mangano's application of the law was neither unreasonable nor contrary to clearly established federal law.

## B.  The 2023 Retention Order Was Not the Result of An Unreasonable Determination of The Facts

Riley argues that the State court unreasonably determined that he was mentally ill and required in-patient care. (Pet. at 2–5). The state court's findings of fact, however,

receive "substantial deference" under section 2254(d)(2). *Brumfield v. Cain*, 576 U.S. 305, 313 (2015). A district court, therefore, may only overturn a state court's habeas decision for an erroneous finding of fact if that finding might represent an unreasonable determination of the facts in light of the evidence presented. *Cardoza v. Rock*, 731 F.3d 169, 177 (2d Cir. 2013) (quoting 28 U.S.C. § 2254(d)). A State court makes an unreasonable factual determination if either (1) reasonable minds could not disagree that the State court misapprehended or misstated material aspects of the record in making its finding or (2) the court ignored highly probative and material evidence. *Id*. at 178 (citing *Wiggins v. Smith*, 539 U.S. 510, 528, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) and *Miller-El v. Cockrell*, 537 U.S. 322, 346, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)). A State court's determination of the facts is not unreasonable, however, if the district court believes that it would have come to a different decision on the first instance. *Brumfield*, 576 U.S. at 313–14 (quoting *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841, 175 L.Ed.2d 738 (2010)). This is because the district court must defer to the state court if "reasonable minds reviewing the record might disagree as to the relevant finding." *Jimenez v. Stanford*, 96 F.4th 164, 198 (2d Cir. 2024) (quoting *Cardoza*, 731 F.3d at 178). Here, the state court's factual determinations were not unreasonable.

Judge Mangano relied on the report of Dr. Andrea Norton, the testimony of Dr. Manjula Vikas, and the testimony of Riley for the state court's findings of fact. (ECF No. 15-3 at SR 446–48). The court first relied on Dr. Norton's report and Dr. Vikas' testimony to find that Riley has been diagnosed with schizophrenia and is therefore mentally ill as defined by C.P.L. § 330.20. The Court then relied on Dr. Vikas' testimony to find that Riley's judgment is too impaired to understand why he needs treatment and in-patient

care. (*Id*. at 446). The court also found that Riley's own testimony supported a finding that he does not believe that he lives with a mental illness or should take medication. (*Id*. at 447). Further, Dr. Vikas testified that Riley continued to struggle with destructive tendencies, such as suicidal ideation, and aggressive acts, such as getting into physical altercations with a roommate and throwing a chair when he could not use a specific restroom. (*Id*. at 446–47). Thus, the court ultimately determined that OMH "established by a fair preponderance of the credible evidence that defendant is mentally ill, that he is in need of inpatient care and treatment, and that his judgment is so impaired that he doesn't understand the need for such care and treatment." (*Id*. at 448).

The Court construes Riley's arguments to allege that the State court ignored highly probative and material evidence in three ways. First, the State court did not acknowledge that Dr. Vikas did not personally evaluate or examine Riley. Second, Riley did not use violence against others, such as his roommate, affirmatively and without provocation. Rather, Riley was acting out of self-defense. Third, Dr. Vikas and the Court did not properly acknowledge and credit Riley's accomplishments such as completing multiple certificate programs and obtaining a G.E.D. (Pet. at 2–5). These arguments, however, are not enough to overcome the substantial deference due to the state court's factual determinations.

The Court has carefully reviewed the entire record and can say unequivocally that the 2023 Retention Order was not the result of an unreasonable determination of the facts. First, the court noted that Dr. Vikas' testimony was unrebutted. (ECF No. 15-3 at SSR 446). On cross examination, Riley could have raised the issue that Dr. Vikas' testimony was not based on a personal evaluation of Riley. Even so, that would have only

gone to the issue of how much weight Judge Mangano would give to Dr. Vikas' testimony. This Court therefore does not find that Judge Mangano made a constitutional error by finding facts based partly on Dr. Vikas' testimony.

Second, Riley did not present Judge Mangano with evidence that he was being harmed by his roommate or others in the psychiatric facility that caused him to use violence in self-defense. OMH, on the other hand, did provide evidence that Riley has consistently made such statements because his mental illness prevents him from fully appreciating his actions against others and causes him to see himself as a victim after a physical or verbal altercation. (ECF No. 15-2 at SR 323–24). Judge Mangano therefore reasonably relied on Dr. Vikas' testimony and Dr. Norton's report to find that Riley became physically and verbally aggressive against others without provocation.

Lastly, Riley is correct that Dr. Vikas' testimony did not acknowledge all his accomplishments since his initial confinement. (*See* Pet. at 4). Based on the record here, this Court acknowledges that Riley has progressed from being placed within the definition of having a "dangerous mental disorder" to being placed within the definition of "mentally ill." (ECF No. 15-2 at SR 86–96). This permits Riley to reside in a non-secure psychiatric facility rather than be confined in a secure psychiatric facility. The record also shows that Riley was increasingly compliant with taking medications once he was prescribed Abilify. (*Id.* at SR 107, 113, 123, 300–01). These accomplishments, however, are still separate considerations from requirements of C.P.L. § 330.20(1)(d). This Court does not find that Judge Mangano should have changed his factual determinations even if Dr. Vikas testified to Riley's accomplishments.

When considering the entire record, Judge Mangano reasonably determined the facts based on Dr. Norton's report, Dr. Vikas' testimony, and Riley's testimony. Even if some evidence exists to the contrary, or at least to mitigate, that evidence would not be enough to alter this conclusion. Riley's claim for habeas corpus under the Fourteenth Amendment is therefore dismissed.

II.    <u>Riley's ADA Claim is Procedurally Barred and Lacks Merit</u>

Before the Section 330.20 hearing on the 2023 Retention Order, Riley filed a *pro se* "Motion of Eradication of Plead and Summons Request Claims" wherein he appeared to request a withdrawal of his 2006 plea and his release to the community.[12] (ECF No. 15-2 at SR 147). In this motion, Riley included a four-page memorandum of law that appears to argue that his rights under Title II of the ADA were violated. (Pet. at 9–12). Riley's counsel did not adopt Riley's *pro se* motion. (ECF No. 15-3 at SR 448). Following the hearing, Judge Mangano found that the *pro se* motion was not properly before him and denied it. (ECF No. 15-3 at SR 21) (citing *People v. Rodriguez*, 95 N.Y.2d at 500). Riley argues that Judge Magano's decision violated his rights under Title II of the ADA and its regulation 28 C.F.R. § 35.130(d) by denying him the ability to receive psychiatric services "in the most integrated setting appropriate to the needs of qualified individuals with disabilities." (Pet. at 11).

A federal court "will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Downs v. Lape*, 657 F.3d 97, 101 (2d Cir. 2011) (quoting *Cone v. Bell*, 556 U.S. 449, 465 (2009)); *see also Cotto v.*

---

[12] As noted by Judge Mangano, the New York State Legislature has not passed a statute that creates the relief of "eradication." (ECF No. 15-3 at SR 448).

*Herbert*, 331 F.3d 217, 238 (2d Cir. 2003) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). For example, the independent and adequate state ground doctrine bars federal habeas where "a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). Here, although Judge Mangano also denied Riley's *pro se* eradication motion on alternative grounds—being unable to find statutory authority to grant "eradication" relief and finding the filing to be "incomprehensible"—"[s]uch holding should be honored even if the state court made an alternative holding on the merits of the federal claim." *Chen v. Miller,* No. 24-CV-2855 (RER), 2025 WL 83774, at *4 (E.D.N.Y. Jan. 13, 2025) (citing *Harris*, 489 U.S. at 264 n.10 (1989)).

In *People v. Rodriguez*, the New York Court of Appeals upheld the trial court's decision to decline a defendant's *pro se* motions while he was represented by counsel. 95 N.Y.2d at 500. The Court of Appeals held that "[b]ecause a criminal defendant is not entitled to hybrid representation**,** we refuse to prescribe any fixed rule for addressing *pro se* motions and conclude that the decision to entertain such motions lies within the sound discretion of the trial court." *Id.* Thus, Riley's ADA argument was dismissed on an independent state law ground.

The independent ground was also adequate. A state ground of decision is adequate if it is "firmly established and regularly followed," *Downs*, 657 F.3d at 102 (quoting *Walker v. Martin*, 562 U.S. 307, 316 (2011)), meaning that case law interpreting it "displays consistent application in a context similar to" the habeas case being considered, *Richardson v. Greene*, 497 F.3d 212, 219–20 (2d Cir. 2007) (finding New

York's contemporaneous objection rule adequate because a New York court invoked that rule in a factually similar case). State appellate courts regularly uphold trial court decisions declining consideration of defendant's *pro se* motions because their defense counsel declined to adopt them. *See, e.g., People v. Edwards*, 223 A.D.3d 840, 841 (2d Dep't 2024) (leave to appeal denied where "[t]he County Court providently exercised its discretion in declining to consider the defendant's pro se motion to withdraw his plea of guilty, inter alia, because the defendant was represented by counsel"); *People v. Munoz-Zuleta*, 229 A.D.3d 641, 642 (2d Dep't 2024) (defendant's contention he moved to withdraw his plea was unpreserved for appellate review where "[the] record does not include the defendant's pro se motions to withdraw the plea as defendant's counsel declined to adopt the motions"); *People v. Scott*, 172 A.D.3d 543, 544 (1st Dep't 2019) (the trial court did not err as it "exercised its discretion when it declined to consider defendant's pro se CPL 330.30 motion. . . on the ground that defense counsel declined to adopt this motion"); *People v. Horton*, 166 A.D.3d 1226, 1227 (3d Dep't 2018) ("defendant's pro se submission prior to sentencing did not preserve his challenge to his guilty plea because he was represented by counsel and was not entitled to hybrid representation"); *People v. Smith*, 118 A.D.3d 920, 921, (2d Dep't 2014) ("the County Court did not improvidently exercise its discretion in declining to entertain the pro se motion, which was not adopted by defense counsel"); *People v. Howard*, 175 A.D.3d 1620, 1621 (3d Dep't 2019) ("It is uncontroverted that defendant had counsel at the time that he filed his pro se motion to dismiss the indictment. Accordingly, it was within Supreme Court's discretion to decline to address defendant's pro se motion").

There are two exceptions to the bar on review of procedurally defaulted claims: (1) where there is either "cause [for the procedural default] and actual prejudice, or that he is actually innocent." *Gutierrez v. Smith*, 702 F.3d 103, 111 (2d Cir. 2012) (internal quotations omitted). There are two ways to establish "cause." *Id.* First, if "some objective factor, external to Petitioner's defense, interfered with his ability to comply with the state's procedural rule." *Id.* (citing *McCleskey v. Zant,* 499 U.S. 467, 493 (1991)). "Second, [] 'where prior state case law has consistently rejected a particular constitutional claim.'" *Id.* at 111–12 (quoting *DiSimone*, 461 F.3d at 191). However, "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). To show actual "prejudice," the error must have resulted in "substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions." *Id.* at 112 (alteration in original) (quoting *Murray v. Carrier*, 477 U.S. 478, 494 (1986)). To show "actual innocence," Petitioner must "support his allegations ... with new reliable evidence ... that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Riley has failed to show either cause and prejudice or actual innocence. That Riley's defense counsel declined to adopt the "eradication motion" is without doubt an external factor that prevented Judge Mangano from considering his motion. However, at no point did Riley attempt to represent himself *pro se*. Instead, Riley filed a *pro se* motion while being represented by counsel, an attempt at "hybrid representation." In any case, Riley has also not shown prejudice. In fact, Judge Mangano considered Riley's *pro se* motion and reasoned that "defendant's submission – which reads much like his testimony – only bolsters this Court's opinion that defendant is mentally ill, that he continues to need

inpatient treatment, and that he does not understand the need for this care and treatment."
(See ECF No. 15-3 at SR 448–49).

As to whether Riley has proven "actual innocence", "[t]here does not appear to be Second Circuit case law interpreting the 'actual innocence' standard in the context of civil confinement, nor have other circuits enunciated a clear rule." *Bennett v. Dill*, No. 21-CV-1450 (PKC), 2022 WL 4451040, at *8 (E.D.N.Y. Sept. 23, 2022) (citing *Brown v. Watters*, 599 F.3d 602, 609–10 (7th Cir. 2010)); *see also Jones v. Tope*, No. 21-CV-1007 (AMN/ML), 2024 WL 3206260 at *7 (N.D.N.Y. February 16, 2024) ("The Court need not decide whether and how the 'actual innocence' exception to procedural default applies to civil commitments because . . . [petitioner's claim was] (1) barred on adequate and independent state grounds, and (2) meritless."). Although Riley attempted to withdraw his 2006 plea, here, his 2023 Retention Order decision is the only decision on the merits properly presented in his Petition. As reasoned above, Riley's defense attorney's choice to decline to adopt Riley's *pro se* motion would not have produced a different result, Judge Mangano's findings would have been the same either way, and, as explained below, Riley's ADA claim is meritless.

Riley's ADA claim fails on the merits because the trial court's decision was not contrary to nor an unreasonable application of clearly established federal law under the ADA and was not unreasonable given the record presented. *See* U.S.C. § 2254(d)(1-2). Riley correctly cited the controlling Supreme Court precent for Title II of the ADA. *See Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 587 (1999). In *Olmstead*, the Court held that "under Title II of the ADA, States are required to place persons with mental disabilities in community settings rather than in institutions when [1] the State's treatment

professionals have determined that community placement is appropriate, [2] the transfer from institutional care to a less restrictive setting is not opposed by the affected individual, and [3] the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with mental disabilities." *Id.* In his "motion to eradicate" and again in this Petition, Riley appears to argue Title II of the ADA "provides that no qualified individual with a disability shall by reason of such disability, be excluded from participation in or be denied the benefits of the services programs, or activities of a public entity, or be subjected to discrimination by any such entity." (*See* Pet. at 11.) In doing so, Riley's arguments suggest this violation necessitates his release to a community-based treatment program "with all appropriate services necessary to maintain my current placement in a community-based treatment program." *Id.* Ostensibly, Riley argues the state court erred in granting OMH's application to retain him at a nonsecure facility, appearing to either advocate for his own release to a community-based outpatient program on Track 3 of CPL § 330.20, or doing away with his conditions altogether. Applying the *Olmstead* factors, most applicably the first factor, Riley's team at KPC, including Drs. Norton and Vikas, firmly opined that he is not ready to be released to the community. His team at KPC wants to see him comply with unescorted furloughs and prove he can show better impulse control without new incidents. Therefore, the trial court's decision to retain Riley at a nonsecure facility was not an unreasonable application or contrary to the ADA's or the Supreme Court's precedent and was not unreasonable after considering the facts presented. Thus, notwithstanding the procedural bar, Riley is not entitled to habeas relief.

III.    Riley's Eighth Amendment Claim Is Not Cognizable

Finally, Riley argues that his continued NRRMDD commitment is in violation of the Eighth Amendment right to be free from cruel and unusual punishment. (Pet. at 11). Even if such a claim was exhausted and not procedurally barred, it would nevertheless be incognizable because "the Eighth Amendment applies only to 'punishment,' and as 'an insanity acquittee ... was not convicted, he may not be punished.'" *Lombardo v. Holanchock*, No. 07 Civ. 8674 (DLC), 2008 WL 2543573, at *9 (S.D.N.Y. June 25, 2008) (quoting *Jones v. United States*, 463 U.S. 354, 369 (1983)); *see also Babyrev v. Belfi*, 2022 WL 1304208, at *6 (S.D.N.Y. May 2, 2022) ("Because Petitioner has been adjudicated NRRMDD, rather than convicted of a crime, his claim must be analyzed under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment."). As explained above, the 2023 Retention Order did not violate Riley's Fourteenth Amendment rights, so there is no need to analyze the claim under the Eighth Amendment.

## CONCLUSION

For the reasons set forth above, the Petition is denied. The Clerk of the Court is respectfully requested to close the case. A certificate of appealability shall not issue because Petitioner has not made a substantial showing that he was denied any constitutional rights. See 28 U.S.C. § 2253(c)(2). The Court certifies that any appeal of this memorandum and order would not be taken in good faith, and thus in forma pauperis

status is denied for the purposes of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Hon. Ramón E. Reyes, Jr.

Digitally signed by Hon. Ramón E. Reyes, Jr.
Date: 2025.09.16 14:18:41 -04'00'

—————————————————————
RAMÓN E. REYES, JR.
United States District Judge

Dated: September 16, 2025
        Brooklyn, New York

24